St. Louis Southwestern Railway Company v. Gant.

Opinion delivered June 9, 1924.

1. Master and servant—assumed risk.—The general rule is that one who, knowing and appreciating the danger, enters upon a perilous work, even though by a superior's orders, must bear the risk; but where he is not aware of the danger and does not appreciate the risk, and such ignorance is consistent with due care on his part, the rule is otherwise.

2. Master and servant—care as to safe working place.—A master must use ordinary care to supply a safe working place for the use of his servants, and in discharge of his duty is bound to exercise reasonable diligence in informing himself that the working place is safe.

3. Master and servant—servant's reliance on master's care.— In the absence of knowledge of danger and appreciation of risk, a servant may assume that the master has done his duty and rely to some extent on his superior judgment, but he cannot plead ignorance of a danger that is obvious to any one with his experience in the work.

4. Master and servant—assumed risk—jury question.—In an action by a section hand for injuries sustained in an explosion when ordered by his foreman to take a lantern and see how full an oil-car was of water, whether the plaintiff assumed the risk from obeying the foreman's command held for the jury.

5. Trial—repetition of instructions.—Refusal of an instruction covered by instruction given was not error.

Appeal from Miller Circuit Court; *James M. McCollum*, Judge; affirmed.

*J. R. Turney, Gaughan & Sifford* and *Elbert Godwin*, for appellant.

1. The principle of law is elementary that an employee of a railroad company assumes the usual and ordinary risks incident to his employment and the method of work adopted, so far as such risks are known to him, or can be known to him by the exercise of ordinary and reasonable care. 65 Ark. 98. It is likewise elementary that the doctrine of assumption of risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment. If he knows, or, in the exercise of reasonable and ordinary care, should know, the risk to which he is exposed, he will be held to

have assumed it. 98 Ark. 211; 96 Ark. 387. It is clear from the testimony that appellee and all others working under Westbrook at the time in question, were warned of the danger of approaching the tank cars with a lighted lantern; but, aside from that, appellee had a concrete warning, which he admitted having seen, of the setting afire of the top of one of the cars by the striking of a match to light a cigarette. The servant assumes the risk, where he and the master are possessed of equal knowledge, or means of knowledge, of defects and dangers, or where they are equally ignorant thereof. 26 Cyc. 1202, 1203; *Id.* 1241. If the danger is obvious, and can be seen by the servant, the fact that he is directed by the master to perform such dangerous work will not relieve him of the assumed risk. 66 Mich. 277; 88 Wis. 376; 14 Ky. L. Rep. 688, 21 S. W. 346.

2. Under the Federal Employers' Liability Act, the contributory negligence of the plaintiff will not defeat a recovery, but will diminish the damages recoverable in proportion to the degree to which plaintiff's negligence contributed to the injury. If his negligence was the proximate cause of the injury, he cannot recover. 26 Cyc. 1246; 194 Ala. 94, 69 So. 611.

*William F. Denman,* for appellee.

1. A servant, when he enters the service of another, or while he continues in that service, does not assume the risk of dangers arising from the negligence of the master, unless he is aware of such negligence and appreciates the danger. And, in the absence of knowledge on his part, he has the right to rely upon the assumption that the master has performed the duties devolving upon him, so as not to expose him to extraordinary hazards. 67 Ark. 209; 90 Ark. 226; 95 Ark. 295. Under the circumstances of this case, it was a question for the jury to say whether or not the appellee assumed the risk. 136 Ark. 606; 95 Ark. 291; 121 Ark. 433; 128 S. W. 83. And for them to say whether or not he knew and appreciated the danger incident to boarding the car in the manner indicated. The master and servant are not on the same footing. The

latter's primary duty is obedience, and if, while in the discharge of that duty, he is damaged through the neglect of the master, he is entitled to be recompensed. 149 Ark. 109; Labatt on Master and Servant, 440. He has the right to assume that the master will not expose him to unnecessary danger, and will not cause him to take extraordinary risks by obeying orders of those in authority over him; and he cannot be said as a matter of law to be guilty of negligence in obeying such orders when he does not know the danger. Labatt, Master and Servant, 440-b; 56 Ark. 206; 58 Ark. 66; 65 Ark. 138; 95 Ark. 297.

2. Contributory negligence, in an action based on the Federal Employers' Liability Act, does not bar a recovery. It only diminishes the damages in proportion to the amount of negligence attributable to the servant. 144 Ark. 229; § 3, Federal Employers' Liability Act.

HART, J. This was an action to recover damages for personal injuries sustained by A. W. Gant while in the service of the St. Louis Southwestern Railway Company as a section hand.

The plaintiff was engaged, with other section hands, under the supervision of a foreman, in filling oil tanks with water at Stamps, Arkansas. Some time after dark the plaintiff went up on an oil tank with a lighted lantern to see if it was full of water. He could see where the oil had wasted around on the car. When he got up on the car there was an explosion, which severely injured him. The explosion was caused by the oil evaporating and coming in contact with the lighted lantern.

The plaintiff recovered judgment in the sum of $1,000, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

The main contention here is that the verdict was not justified by the evidence, for the reason that the plaintiff must be deemed as a matter of law to have assumed the risk.

The general rule is that one who, knowing and appreciating the danger, enters upon a perilous work, even though he does so by order of a superior, must bear the

risk; but, where he is not aware of the danger and does not appreciate the risk, and such ignorance is consistent with due care on his part, the case is different. The master and servant do not stand upon the same footing in this respect. It is the master's duty to use ordinary care to supply a safe working place for the use of his servants, and, in the discharge of this duty, he is bound to exercise reasonable diligence in informing himself that the working place is safe.

On the other hand, in the absence of knowledge of danger and the appreciation of the risk, the servant has a right to assume that his master has done his duty and to rely to some extent on his superior judgment. Of course the servant cannot be heard to plead ignorance of a danger that is patent and obvious to any one with his experience in the work. *Southwestern Tel. Co.* v. *Woughter*, 56 Ark. 206; *Griffin* v. *St. L. I. M. & S. Ry. Co.*, 121 Ark. 433, and *Scott* v. *Wisconsin & Arkansas Lbr. Co.*, 148 Ark. 66.

It appears from the record that the plaintiff, A. W. Gant, is a colored man, and was thirty-one years of age at the time he was injured. He had been working as a section-hand for the defendant, under Z. Westbrook as his foreman, for about two years. Their principal work was putting cross-ties in the railroad; but in December, 1922, they were directed by Westbrook to go into the yards of the railroad at Stamps, Arkansas, and fill the oil-tank cars with water. There was a shortage of water at Texarkana, and the oil-tank cars to be filled with water were to be carried there for the use of the railroad. About ten o'clock in the night Westbrook asked Gant how near he had his tank full. According to the testimony of Gant, he told Westbrook that he did not know. Westbrook then said to him, "Take your lantern and go and see about it. We want to get through at ten o'clock, and I will give you boys a day for it." Gant then took the lighted lantern from the hands of Westbrook, and went up on the tank-car. As soon as he got up there an explosion occurred, which severely injured

him. The tank-car in question had been used in hauling oil, and Gant could see where the oil had wasted around on the car.

On cross-examination Gant admitted that, on the morning before he was hurt, he saw another section-hand on top of a tank-car light a cigarette, and that this caused the top of the car to catch on fire. He was some distance away, but heard them talking about it, and knew that the fire was caused by a match struck by the section-hand. He said that he did not know, however, that, if he got up on the tank with a lighted lantern, the tank would catch on fire. The gas which caught on fire from the lighted match burned for some time, but Gant did not know how long it burned. Gant's testimony was corroborated by that of another section-hand.

On the other hand it was shown by the railroad company that all the section-hands had been warned, before they went to work, of the danger from gasoline. They were told that they must not use a light of any kind around it; that, if they did so, the gas would catch on fire and explode.

According to the testimony of Westbrook, he told the plaintiff not to go on the car with the lantern, for the reason that he might set the car on fire. The plaintiff replied that there was too much water in it for that, and proceeded on his way. When he stuck the lantern in the top of the car the explosion occurred, and the plaintiff fell off of the car.

The testimony of Westbrook was corroborated by a third person who happened to be present.

Assuming all the facts as favorable to the plaintiff as the evidence warrants, we cannot say, as a matter of law, that the plaintiff assumed the risk; but it was open to the jury to find that the plaintiff did not know or appreciate the risk of the work upon which he was engaged at the time he was hurt.

It is true that he saw another section-hand light a cigarette on top of a tank-car and thereby cause an explosion, and, by seeing this, he must have known in a

general way that the gas around the tank-cars would explode if exposed to a flame. He had a right, however, to rely to some extent upon the superior knowledge of his foreman. The work was being done under his immediate supervision and direction. Gant might have assumed that the foreman knew that there was more oil in and around the car where the explosion was caused by the lighted match, or that he might have thought that a lighted match would be more likely to cause an explosion than the light from a lantern, which was inclosed by its globe. Again, he might have thought that there was less danger of an explosion because his tank was nearly full of water, and that this had driven nearly all of the gas from the tank.

Under the circumstances stated it might have been found by the jury that Gant did not appreciate, and, in the exercise of ordinary care, was not bound to appreciate, the danger from obeying the command of his foreman. The case is close, but the evidence is sufficient to be submitted to the jury upon this issue.

The next assignment of error relied upon for a reversal of the judgment is that the court erred in refusing to give instruction No. 4. The instruction reads as follows: "You are instructed that, if you believe from the testimony of the witnesses that at the time that plaintiff started to go on the car with the lighted lantern he was warned by Westbrook, his foreman, not to take the lantern with him, and, in disregard of said warning, plaintiff went upon said car with said lantern in his hand, which lantern ignited the gas escaping from said car and caused the explosion which resulted in the injury, then your verdict should be for the defendant."

In this connection it may be stated that the court gave instructions Nos. 3 and 5 at the request of the defendant. Instruction No. 3 reads as follows: "You are instructed that, if you believe that plaintiff, after having been cautioned or warned of the danger of carrying a light on or about said tank-car, and, in disregard of said warning, proceeded to go upon said car, carrying

a lighted lantern with him, which lantern ignited the gas escaping from said car and caused the explosion which resulted in the injury complained of, then your verdict should be for the defendant."

Instruction No. 5 is as follows: "You are instructed that, if you believe from the testimony that plaintiff's foreman, or any of the employees of the company, before the injury occurred, warned and instructed plaintiff; or warned and instructed any others in the presence and hearing of plaintiff, to keep lights or lighted lanterns away from the cars, and that plaintiff, after having heard said warnings given, in disregard of his own safety, went upon said car with a lighted lantern, and, as a result thereof, the escaping gas from the car ignited, causing the explosion, resulting in the injury complained of, then your verdict should be for the defendant."

While it is true that instruction No. 4 submits the issue of the warning given by the foreman in a concrete form, and should have been given if no other instruction had been asked or given on that point, yet the refusal to give it does not constitute reversible error. The court is not required to multiply instructions upon the same point. Instructions Nos. 3 and 5 were given to the jury at the request of the defendant. It was the theory of the defendant that the plaintiff and the other section-hands had been fully warned of the danger of working around the oil tanks with any kind of light before they commenced to work at the time in question.

This theory of the case was fully covered by instruction No. 5. This instruction specifically submitted to the jury the question of warning the employees before the injury occurred, and this referred to the warning given them before they commenced work.

Instruction No. 3 is more comprehensive, and embraces any warning that might have been given to the plaintiff of the danger of carrying a light on or about said tank-cars. This instruction is as applicable to the testimony of Westbrook as it is to the testimony of the other witnesses for the defendant. The defendant claims

that the plaintiff was warned of the danger of working around the tank-cars with any kind of light, before he commenced work. This, as we have already seen, was fully covered by instruction No. 5. The only other warning that the defendant claims that the plaintiff had, was a warning which Westbrook said he gave him when he went upon the tank-car with the lighted lantern just before the explosion.

Instruction No. 3 covered this phase of the case. If the defendant had told the court that it preferred instruction No. 4 to instruction No. 3, doubtless the court would have given No. 4 instead of No. 3. For the reason that the matters embraced in instruction No. 4 are covered by instruction No. 3, we do not think the refusal to give instruction No. 4 resulted in any prejudice to the rights of the defendant, and the refusal to give it did not constitute reversible error.

It follows that the judgment will be affirmed.